UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

WILLIAM WHALEN,

                      Plaintiff,

   -against-                                            5:11-CV-0794 (LEK/TWD)

CITY OF SYRACUSE,

                      Defendant.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

Plaintiff William Whalen ("Plaintiff") commenced this disability discrimination action against his employer, the City of Syracuse ("Defendant"), on July 12, 2011. Dkt No. 1 ("Complaint"). Presently before the Court is Defendant's Motion for summary judgment. Dkt No. 25 ("Motion"). For the following reasons, the Motion is granted.

**II.    BACKGROUND**

Plaintiff works in Defendant's Department of Public Works ("DPW"). Dkt. Nos. 25-1 ("SMF") ¶ 1; 37 ("Response") at 4. He began working there in 1984. SMF ¶ 1; Resp. at 4. During his employment with Defendant, Plaintiff worked with Jeffrey Lopes ("Lopes"), who began working for Defendant in 1985. SMF ¶ 2; Resp. at 4. Plaintiff and Lopes have known each other since Plaintiff was seventeen years old, around which time the two had a physical altercation. SMF ¶ 2; Resp. at 4. Since the late 1990s, a series of workplace conflicts have occurred between Lopes and Plaintiff. SMF ¶ 4; Resp. at 4. At one time, Plaintiff, while working on the milling crew of DPW's Street Repair Section, had what Defendant describes as a "verbal dispute" with Lopes, who was his foreman at that time. SMF ¶ 5. According to Plaintiff, this incident was not a dispute

between him and Lopes, but harassment by Lopes. Resp. at 4. Plaintiff states that Lopes ordered him to do work for which he would not be adequately compensated, and when Plaintiff refused, Lopes verbally abused him. Id. After this incident, Plaintiff requested that his supervisor reassign Plaintiff to work for the paving crew with a different foreman. SMF ¶ 5.

Defendant states that in July 2007, Plaintiff and Lopes engaged in a physical altercation at work. Id. ¶ 6. According to Plaintiff, Lopes assaulted him in front of his co-workers, and although Plaintiff struck back at Lopes, he did so only after Lopes attacked him. Resp. at 4-5. Based on this incident, Plaintiff filed a claim for a work-related injury with the New York State Workers' Compensation Board on or around September 14, 2007. SMF ¶ 7. On September 17, 2007, Plaintiff also filed a grievance with his union, in which he complained of harassment in the workplace and requested that Defendant stop harassment and horseplay by Lopes. SMF ¶ 9; Dkt. No. 25-10 at 1-2. After investigating the grievance, Defendant concluded that Plaintiff was the victim of horseplay, which violated Defendant's Work Rules and Policies. SMF ¶ 9. Plaintiff also filed a complaint with Defendant's Office of Personnel and Labor Relations, which similarly found that Lopes had engaged in horseplay. Id. ¶¶ 10-11.

In a letter dated January 9, 2008, Plaintiff's primary care physician stated that Plaintiff suffered from anxiety and depression, which had "developed after a workplace altercation with a fellow employee, and continue to persist in association with continued workplace strife." Dkt. No. 25-11 ("McMahon Letter").[1] It further stated that Plaintiff "now requires medications . . . and psychotherapy to control his symptoms" and that Plaintiff "did not suffer from anxiety and depression prior to 2007." Id.

---

[1] It is unclear to whom the McMahon Letter was addressed. See McMahon Letter.

The hearing for Plaintiff's workers' compensation claim was held on March 18, 2008.[2] See Dkt. No. 25-9 ("Workers' Compensation Transcript"). The Workers' Compensation Judge found that Plaintiff's testimony was credible and that it established a claim of accident, notice, and causal relationship involving anxiety and depression based on the July incident. Id. at 108-09. The Workers' Compensation Judge authorized causally related medical treatment. Id. at 109.

On June or July 15, 2008,[3] Plaintiff was involved in another altercation with Lopes, which resulted in Plaintiff being suspended for five days for insubordination. SMF ¶¶ 14-15. Plaintiff filed a grievance with his union disputing the suspension, which Defendant subsequently reduced to three days. Id. ¶ 15.

Due to his troubled relationship with Lopes, Plaintiff requested work assignments that would not bring him into contact with Lopes. Dkt. No. 25-15 ("Simone Affidavit") ¶ 12; see also SMF ¶ 13. Defendant attempted to accommodate these requests, but Plaintiff could not be kept completely separate from Lopes, both because the nature of DPW's work sometimes required placing them on the same crew, and because Lopes would sometimes come into contact with Plaintiff even when they were not assigned to the same crew. Simone Aff. ¶ 12; see generally Dkt. No. 25-8 ("Whalen Deposition"). Plaintiff alleges that the harassment by Lopes continued despite his requests. See generally Whalen Dep.

---

[2] Although Defendant states that the hearing was held on March 17, 2007, SMF ¶ 8, the Workers' Compensation Transcript is dated March 18, 2008, Workers' Comp. Tr. at 1.

[3] Defendant's SMF states that this incident occurred on June 15, 2008, SMF ¶ 14, while the Simone Affidavit appears to refer to the same incident as occurring on July 15, 2008, Dkt. No. 25-15 ("Simone Affidavit") ¶ 10.

3

Additionally, Plaintiff has taken many medical leaves during his employment due to his inability to operate heavy equipment while medicated. SMF ¶ 17. Defendant accommodated all such leave requests. Simone Aff. ¶ 13.

On May 12, 2010, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") alleging disability-based discrimination. SMF ¶ 18. NYSDHR found no probable cause to support the complaint's allegations. Id. ¶ 22. Plaintiff commenced this action on July 12, 2011, asserting that Defendant discriminated against him under the Americans with Disabilities Act ("ADA") by failing to provide reasonable accommodation and by subjecting him to a hostile work environment. Compl. at 1; see also Resp. at 11-12. Plaintiff seeks injunctive and monetary relief. Compl. at 9-10. Defendant moved for summary judgment on September 25, 2013. Mot.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the non-moving party will bear the burden of proof on a specific issue at trial, the

moving party may satisfy its own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. Id. If the moving party carries its initial burden, then the non-moving party bears the burden of demonstrating a genuine issue of material fact. Id. This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). A court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

**IV. DISCUSSION**

ADA discrimination claims proceed according to the familiar burden-shifting framework established in McDonnell Douglas Corp. v. Greene, 411 U.S. 792 (1973). See Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir. 1999). Under this framework, a plaintiff must first make out a prima facie case by showing that: (1) the plaintiff's employer is subject to the ADA; (2) the plaintiff was a person with a disability within the meaning of the ADA; (3) the plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) the plaintiff suffered adverse employment action because of her disability.[4] Shannon v. N.Y. City Transit Auth.,

---

[4] Prior to the ADA Amendments Act of 2008, Pub.L. No. 110–325, 122 Stat. 3553 (2008), the ADA prohibited employment discrimination "against a qualified individual with a disability because of the disability of such individual," 42 U.S.C. § 12112(a) (2006). The statute now

332 F.3d 95, 99 (2d Cir. 2003). "A plaintiff's burden of establishing a *prima facie* case is *de minimis*." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001). If the plaintiff meets this minimal burden, the employer must offer a "clear and specific" nondiscriminatory reason for the adverse action. Meiri v. Dacon, 759 F.2d 989, 996-97 (2d Cir. 1985). Once such a reason is provided, the plaintiff can no longer rely on his prima facie case, but may prevail if he can show that the employer's action was in fact the result of discrimination. Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008).

In this case, Plaintiff claims that Defendant discriminated against him by: (1) failing to make reasonable accommodations that would allow him to do his job; and (2) subjecting him to a hostile work environment. Compl. at 1; see also Resp. at 11-12.

**A. Failure to Accommodate**

A plaintiff can establish a prima facie case of discrimination based on a failure to accommodate by showing that: (1) "plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform essential functions of the job at issue; and (4) the employer refused to make such accommodations." Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006).

Defendant challenges Plaintiff's failure to accommodate claim by arguing that: (1) Plaintiff is not a person with a disability within the meaning of the ADA; and (2) Defendant attempted to reasonably accommodate Plaintiff's disability. Dkt. No. 25-16 ("Memorandum") at 11-20.

---

prohibits employment discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a) (2012).

*1. Disability*

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).[5] In 2008, Congress passed the ADA Amendments Act ("ADAAA"), which substantially revised the definition of these terms. Pub. L. No. 110–325, 122 Stat. 3553 (2008); see also Hilton v. Wright, 673 F.3d 120, 128-29 (2d Cir. 2012). The ADAAA took effect on January 1, 2009. ADAAA § 8. Because Plaintiff's claims arise from facts occurring both before and after the effective date of the ADAAA, see Resp. at 9-10, whether Plaintiff is disabled must be analyzed separately for each period, see Ragusa v. Malverne Union Free Sch. Dist., 381 F. App'x 85, 87 n.2 (2d Cir. 2010).

a. Before 2009

i. Actual Disability

To establish actual disability under the pre-ADAAA definition, "a plaintiff must show that (1) he suffers from a 'physical or mental impairment,' (2) that 'substantially limits,' (3) a 'major' life activity." Wegner v. Upstate Farms Co-op., Inc., No. 13-1741-CV, 2014 WL 998195, at *1 (2d Cir. Mar. 17, 2014) (quoting Bragdon v. Abbott, 524 U.S. 624, 631 (1998)). A plaintiff arguing substantial impairment in the major life activity of working must prove that she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i) (2008); see also Wegner, 2014 WL 998195, at *1. "A class of jobs encompasses a

---

[5] Prior to the ADA Amendments Act, Pub. L. No. 110–325, 122 Stat. 3553 (2008), this statutory language was codified as 42 U.S.C. § 12102(2).

7

breadth of positions related to the one a plaintiff cannot perform, not simply analogous positions with slight variations." Wegner, 2014 WL 998195, at *2. "An impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 723 (2d Cir. 1994).

Here, Plaintiff has not offered any proof that his anxiety and depression significantly restrict his ability to perform a broad class of jobs. Indeed, Plaintiff has not even identified which class of jobs he cannot perform.[6] Plaintiff's assertion that his anxiety and depression limited his ability to perform his job as a laborer for DPW relates to only a single position, not a broad range of jobs. "Without specific evidence about 'the kinds of jobs from which [an] impaired individual is disqualified,'" the factfinder cannot "perform the careful analysis that is necessary to determine" whether Plaintiff "was substantially limited in his ability to work." Colwell v. Suffolk Cnty. Police Dep't, 158 F.3d 635, 645 (2d Cir. 1998) (quoting Heilweil, 32 F.3d at 723)). Accordingly, no rational factfinder could determine that Plaintiff was actually disabled under the pre-2009 definition.

### ii. Record of Disability

"Even without a showing of substantial limitation of a major life activity, the ADA's definition of 'disability' can be satisfied by 'a record' of an impairment that substantially limits one or more major life activities." Colwell, 158 F.3d at 645 (citing 42 U.S.C. § 12102(2)(B) (1994)). "The record must be one that shows an impairment that satisfies the ADA." Id.

---

[6] Although Defendant devoted a significant portion of its Memorandum to its argument that Plaintiff is not disabled under the ADA, Mem. at 11-16, Plaintiff did not provide any response to this argument, see generally Resp.

8

Here, there is no record of a disability that substantially limited Plaintiff's ability to work in a broad class of jobs. Although his record of medical leaves from work and his worker's compensation award constitute a record, he has not presented any argument as to how these records might demonstrate an impairment limiting his ability to perform a broad class of jobs. Furthermore, although Plaintiff alleges that his worker's compensation award was followed by six months of medical leave, Compl. ¶ 20, six months is too short a duration to constitute a substantially limiting impairment, see Colwell, 158 F.3d at 646.

### iii. Perceived Disability

"An employee who is not actually disabled may nonetheless establish 'disability' as defined in the ADA through evidence of adverse employment action based on employer perception of actual disability." Wegner, 2014 WL 998195, at *3 (citing 42 U.S.C. § 12102(2)(C) (2006)). However, to prevail on this "regarded as" prong of the pre-ADAAA definition of disability, a plaintiff must show that her employer regarded her as disabled "within the meaning of the ADA"; being regarded as "somehow disabled" is insufficient. Id. This prong therefore requires a showing that the employer perceived the employee as "incapable of working in a broad range of jobs." Id.

Plaintiff has offered no evidence that Defendant regarded him as incapable of performing a broad class of jobs. Although Defendant occasionally changed Plaintiff's work assignments when he could not operate heavy equipment due to medication, SMF ¶ 17, this fact alone cannot prove that Defendant regarded Plaintiff as substantially limited in his ability to work, see, e.g., Colwell, 158 F.3d at 647 (holding that accommodation of policeman's physical disability by assignment to non-confrontational positions does not permit inference that the officer was regarded as substantially limited in ability to work); Beason v. United Techs. Corp., 213 F. Supp. 2d 103, 111-

9

15 (D. Conn. 2002) (holding that employee who was medically unable to use heavy machinery was not regarded as being disqualified from broad range of jobs). To the extent Defendant's attempts to limit contact between Plaintiff and Lopes may have been motivated by a perception that Plaintiff was restricted in his ability to work, Plaintiff has not shown that this perception was anything more than a belief that Plaintiff was incapable of working with Lopes. An inability to work with a single co-worker or supervisor necessarily limits the disability to a single position rather than a broad class of jobs. Accordingly, no rational factfinder could determine that Defendant regarded Plaintiff as substantially limited in his ability to work.

Because Plaintiff cannot show that he was disabled for the purposes of the pre-2009 ADA, Plaintiff's reasonable accommodation claim fails to the extent it is based on conduct occurring before 2009.

### b. After 2009

The ADAAA expanded the definition of disability in several ways. Although the statute still requires that a plaintiff alleging actual disability must establish that (1) he suffers from a "physical or mental impairment," (2) that "substantially limits," (3) a "major" life activity, 42 U.S.C. § 12102; see also Wegner, 2014 WL 998195, at *1, the statute now states that the definition of disability should be construed in favor of "broad coverage of individuals," and that "[a]n impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability," 42 U.S.C. § 12102(A), (C). Enactment of the ADAAA led to corresponding changes in relevant regulations. 29 C.F.R. § 1630.2 no longer requires a plaintiff arguing substantial impairment in the major life activity of working to prove that she was significantly restricted in her ability to perform either a class of jobs or a broad range of jobs in

various classes. That regulation now states that "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(iii) (2014).

Here, Plaintiff's anxiety and depression clearly satisfy the actual disability prong under the ADAAA. See 29 C.F.R. § 1630.2(h)(2) ("[M]ental impairment means . . . any mental or psychological disorder . . . ."). The Court need not analyze this element any further, and therefore turns to whether, for the period after 2009, Defendant refused to make reasonable accommodations.

### 2. Reasonable Accommodation

In order to prevail on his failure to accommodate claim, Plaintiff must show that with reasonable accommodation, he could perform the essential functions of his job, and that Defendant refused to make such accommodations. See Graves, 457 F.3d 184. "Reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). "On the issue of reasonable accommodation, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits." Kennedy v. Dresser Rand Co., 193 F.3d 120, 122 (2d Cir. 1999). Although "[t]his burden is not a heavy one. . . . district courts may properly grant summary judgment when a plaintiff fails to meet even this light burden." Id.

Based on the record in this case, no rational factfinder could determine that Defendant failed to make reasonable accommodations that would allow Plaintiff to do his job. Notably, Plaintiff is not alleging that Defendant totally failed to accommodate his anxiety and depression; the record establishes that Defendant has, on several occasions, allowed Plaintiff to take medical leave when

11

he was unable to operate heavy machinery due to medication. SMF ¶ 17. Rather, the essence of Plaintiff's failure to accommodate claim is that exposure to Lopes triggers his anxiety and depression, and that Defendant has failed to accommodate this aspect of his disability. Resp. at 11. However, Plaintiff has not met his minimal burden of identifying a reasonable accommodation that would allow him to perform the essential functions of his job. Although Plaintiff requested that Lopes be kept away from him in the workplace, this accommodation, even if reasonable,[7] does not allow Plaintiff to do his job. Indeed, it is undisputed that Defendant did place Plaintiff and Lopes on separate work crews whenever possible. SMF ¶¶ 13, 17; Resp. at 6. This attempt at accommodation failed for multiple reasons. First, the harassment by Lopes apparently continued despite Defendant's attempts to separate him from Plaintiff. See Resp. at 6-9. Second, Plaintiff himself sometimes requested to work on the same crew as Lopes. SMF ¶ 13. On one occasion when Defendant, in an effort to accommodate Plaintiff by separating him from Lopes, denied such a request, Plaintiff became angry that he was not being placed on the crew he preferred and filed a grievance against Defendant. SMF ¶ 13. When "an individual rejects a reasonable accommodation . . . that is necessary to enable the individual to perform the essential functions of the position . . . and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered qualified." 29 C.F.R. § 1630.9(d). In short, Defendant's attempts at reasonable accommodation have failed to allow Plaintiff to work at DPW.

---

[7] As discussed further *infra*, a request to change supervisors is presumptively unreasonable. See Kennedy, 193 F.3d at 122-23. Given the history of physical harassment in this case, Plaintiff might be able to overcome this presumption and show that his request to be separated from Lopes is reasonable. However, the Court need not decide this question because the accommodation, even if reasonable, does not allow Plaintiff to perform the essential functions of his position.

12

Although Plaintiff has not explicitly argued that a reasonable accommodation would require the removal of Lopes from DPW, that appears to be the only action Defendant could have taken to allow Plaintiff to do his job. However, an accommodation that involves such drastic personnel action is presumptively unreasonable. See Kennedy, 193 F.3d at 122-23 ("There is a presumption . . . that a request to change supervisors is unreasonable, and the burden of overcoming that presumption (i.e., of demonstrating that, within the particular context of the plaintiff's workplace, the request was reasonable) therefore lies with the plaintiff."); see also Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir. 1995) (stating that the ADA's reasonable accommodation requirement does not obligate employers to terminate other employees). Plaintiff has made no attempt to overcome this presumption, see Resp., and so the Court cannot conclude that termination of Lopes would be a reasonable accommodation.

Because Plaintiff has not identified a reasonable accommodation that would allow him to do his job at DPW, he cannot succeed on his failure to accommodate claim.[8]

**B. Hostile Work Environment**

A hostile work environment constitutes an adverse employment action for purposes of a discrimination claim. See Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002). "[T]he misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Id. at 374 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). A hostile work environment is

---

[8] Alternatively, to the extent Defendant's attempts to separate Lopes from Plaintiff did allow Plaintiff to do his job, see Mem. at 6, Plaintiff's failure to accommodate claim fails because Defendant did not refuse to provide a reasonable accommodation.

actionable only when it is the result of forbidden discrimination. Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001).

Defendant challenges Plaintiff's hostile work environment claim by arguing that: (1) Plaintiff is not a person with a disability within the meaning of the ADA; (2) Plaintiff was not a "qualified individual"—i.e., Plaintiff cannot show that he was otherwise qualified to perform his job with reasonable accommodation; and (3) Plaintiff cannot prove discrimination based on a hostile work environment because any alleged harassment was not motivated by discriminatory animus. See Mem. at 11-20, 24.

### 1. *Disability*

For the reasons stated *supra*, Plaintiff is not disabled under the pre-2009 definition, but is disabled under the post-2009 definition. Plaintiff therefore cannot make out a prima facie hostile work environment claim to the extent it is based on conduct occurring before 2009.

### 2. *Qualified Individual*

To prevail on a discrimination claim, Plaintiff must show that he is a "qualified individual" under the ADA. See 42 U.S.C. § 12112(a). A "qualified individual" means "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position." Id. § 12111(8).

As an initial matter, the Court notes that this case presents a confusing overlap of claims. Plaintiff's failure to accommodate claim is premised on Defendant's failure to protect him from harassment by Lopes. See Resp. at 11-12. Plaintiff also argues that the harassment by Lopes supports a separate hostile work environment claim. See id.; Compl. at 1. Under the former claim, Plaintiff's inability to work with Lopes constitutes the disability for which he requires

accommodation. In his hostile work environment claim, however, Plaintiff's disability can be characterized as his anxiety and depression; the harassment by Lopes constitutes an adverse employment action that he was allegedly subjected to on the basis of his anxiety and depression. In other words, on this claim, the issue of Plaintiff's harassment by Lopes is irrelevant to the "qualified individual" prong of an ADA claim, and goes only to the final prong, whether Plaintiff was discriminated against on the basis of disability.

Accordingly, on this claim, Plaintiff can show that he is a qualified individual based on his ability to perform the essential functions of his position despite his depression and anxiety. Given Defendant's statement that it accommodated Plaintiff by allowing him to take medical leave when he was unable to operate heavy machinery due to medication, SMF ¶ 17, and that his impairments did not otherwise prevent him from performing his job, Mem. at 16, Plaintiff appears to be a qualified individual under the ADA for purposes of his hostile work environment claim.

### 3. *Discrimination on the Basis of Disability*

The ADA prohibits employment discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A plaintiff must demonstrate that her disability was, in the very least, "a motivating factor" for the adverse employment action, if not a "but-for" cause of such an action. See Parker v. Columbia Pictures Indus., 204 F.3d 326, 336-37 (2d Cir. 2000); Mines v. City of New York/DHS, No. 11 CV 7886, 2013 WL 5904067, at *9 n.2 (S.D.N.Y. Nov. 4, 2013) (noting the continued applicability of the mixed-motive standard to ADA claims); Siring v. Oregon State Bd. of Higher Educ., 977 F. Supp. 2d 1058, 1062-63 (D. Or. 2013) (discussing legislative history of ADAAA in applying "motivating factor" standard). A plaintiff cannot rely solely on

conclusory allegations of discrimination without any concrete evidence to support her claims. See Cameron v. Cmty. Aid for Retarded Children, 335 F.3d 60, 63 (2d Cir. 2003).

Here, Plaintiff's allegations of discrimination are wholly conclusory. He has not identified any evidence of discriminatory motive.[9] Indeed, Plaintiff's own allegations suggest that many other employees were subjected to harassment by Lopes, see generally Compl., undermining any claim that Plaintiff was singled out and subjected to a hostile work environment because of his anxiety and depression, see Humphrey v. New York Life Ins. Co., No. 04 CV 1001, 2006 WL 3837718, at *8 (E.D.N.Y. Dec. 28, 2006) (granting summary judgment at prima facie stage where employee admitted he was treated the same as similarly situated employees not in his protected class). Because Plaintiff cannot show that he was subjected to a hostile work environment on the basis of his disability, the alleged harassment by Lopes cannot support an ADA discrimination claim. See Brown, 257 F.3d at 252 (holding that a hostile work environment is actionable only when it is the result of forbidden discrimination). Defendant is therefore entitled to summary judgment in its favor on this claim.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 25) for summary judgment is **GRANTED**; and it is further

---

[9] An employer's failure to make any accommodation for a disabled employee may give rise to an inference that the employer took adverse employment action against the employee because of her disability. McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 102 (2d Cir. 2009) (citing Parker, 204 F.3d at 338). In this case, as discussed *supra*, Defendant made reasonable efforts to accommodate Plaintiff, and so no inference of discriminatory intent arises.

16

**ORDERED**, that the Clerk of the Court enter judgment for Defendant and close this case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

DATED: July 15, 2014
Albany, New York

Lawrence E. Kahn
U.S. District Judge